IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KYLE A. JAHN, | * |
| Plaintiff, | * |
| v. | * Civil Case No. SAG-18-1782 |
| TIFFIN HOLDINGS, INC., *et al.* | * |
| Defendants. | * |

**MEMORANDUM OPINION**

Plaintiff Kyle Jahn ("Jahn") filed this case seeking the payment of unpaid wages from his former employer and several allegedly related entities and individuals, including Tiffin Holdings, Inc., Tiffin Athletic Mats LLC, Daniel Tiffin, Linda Tiffin, and Gerald Stringer (collectively, "Defendants"). ECF 23. Discovery is now concluded, and Jahn has filed a Motion for Summary Judgment ("the Motion"), ECF 50. I have reviewed the Motion, the Oppositions filed by Defendants Gerald Stringer, Linda Tiffin, and Daniel Tiffin, ECF 54, 55, 56, and Jahn's Replies to those Oppositions, ECF 57, 58.[1] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Jahn's Motion will be granted.

I.     **FACTUAL BACKGROUND**

Tiffin Holdings, Inc. and Tiffin Athletic Mats, LLC (collectively, "the Tiffin Companies") are owned and operated by Daniel Tiffin ("Daniel") and Linda Tiffin ("Linda"), a married couple ("the Tiffins"). ECF 50-1, ¶ 16. Daniel and Linda hired employees and directed them in the performance of their jobs. *Id.* A managerial employee, Gerald Stringer ("Stringer"),

---

[1] The corporate Defendants are unrepresented and therefore have not opposed the motion. The individual Defendants appear *pro se*.

assisted the Tiffins in operating the Tiffin Companies. *Id.* ¶ 17. Stringer and the Tiffins held regular meetings to discuss business operations. *Id.* ¶ 18.

In 2016, Daniel hired Jahn to work as a sales representative and tournament director for Defendants. *Id.* ¶¶ 2, 3. From August, 2016, until October, 2017, Jahn worked Monday through Friday, from 8:30 a. m. until 5 or 5:30 p.m. *Id.* ¶¶ 1, 4. From October, 2017 through February 21, 2018, Jahn worked Monday through Friday from 8:30 a.m. until 3 p.m., when he was permitted to leave to work as a wrestling coach. *Id.* ¶¶ 4, 5. In his capacity as a sales representative, Jahn sold athletic equipment to customers over the phone. *Id.* ¶ 8. He regularly sold goods to customers located outside of Maryland. *Id.* ¶ 9. In his role as tournament director, Jahn attempted to lease wrestling mats to tournament organizers, again by phone. *Id.* ¶ 10.

For his work, Jahn received compensation paid at a biweekly flat rate. *Id.* ¶ 7. From August, 2016 through January, 2017, he received "around $2,000" each pay period. *Id.* From January, 2017 through February, 2018, he received "around $2,440" each pay period. *Id.* Jahn did not receive his last two paychecks, which should have compensated him for the last four weeks he worked for Defendants. *Id.* ¶ 12. After Jahn's repeated demands for payment, Daniel Tiffin asked Jahn to work on a strict commission basis. *Id.* Jahn agreed, on the condition that he would be paid for the four weeks he had already worked. *Id.* ¶ 13. Instead, when Jahn refused to give a $1,000 personal loan to Daniel Tiffin, he was terminated. *Id.*

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad*, 823 F.

2

Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

As noted above, each of the individual Defendants, Daniel, Linda, and Stringer, appears *pro se*. Accordingly, their pleadings and motions are subject to liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). However, *pro se* status does not lessen a party's burden with respect to the court's consideration of a summary judgment motion. *See Simmons v. Standard Fire Ins. Co.*, PJM-08-1844, 2010 WL 1881843, at *3 (D. Md. May 7, 2010) ("Although *pro se* pleadings are 'held to less stringent standards than formal pleadings drafted by lawyers,' they 'must still set forth facts sufficient to withstand summary judgment.'" (first internal citation omitted) (quoting *Symeonidis v. Paxton Capital Grp., Inc.*, 220 F. Supp. 2d 478, 480 n.4 (D. Md. 2002))); *see also Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) ("[Plaintiff]'s status as a *pro se* litigant does not alter his duty on a summary judgment motion.").

## III. ANALYSIS

### A. Summary judgment in Plaintiff's favor against each Defendant is appropriate as to Counts I and II of Plaintiff's Amended Complaint.

Plaintiff's Amended Complaint contains three Counts, alleging violations, respectively, of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-19 (2018), the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab & Empl., § 3-401 to -431 (West 2019) and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code. Ann., Lab. & Empl., § 3-501 to -509. ECF 23, ¶¶ 90-96. The Motion focuses on the FLSA/MWHL claims.[2]

The Fourth Circuit has described the FLSA to be "best understood as the minimum wage/maximum hour law." *Trejo v. Ryman Hospitality Properties, Inc.*, 795 F.3d 442, 446 (4th

---

[2] On March 11, 2020, this Court directed Jahn to inform the Court whether he sought summary judgment on each Count of his Amended Complaint. ECF 60. Jahn now indicates that his Motion is only as to Counts I and II. ECF 61, ¶¶ 3-4. Thus, despite being entitled "Motion for Summary Judgment," Jahn's Motion only seeks *partial* summary judgment, and should have been captioned accordingly.

Cir. 2015) (citation omitted). Relevant to this case, the FLSA sets forth "specific minimum protections against excessive work hours and substandard wages." *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1267 (4th Cir. 1996). The MWHL is essentially the state equivalent of the FLSA, and permits an employee to bring an action against an employer to recover unpaid wages, defined as "all compensation that is due to an employee for employment." Md. Code Ann., Lab. & Empl. § 3-401(d); *see Friolo v. Frankel,* 373 Md. 501, 513 (2005) (noting that the MWHL is the "State parallel to the [FSLA]").

To this Court's knowledge, the Fourth Circuit has not addressed a case involving the minimum wage provision of the FLSA, because most adjudicated cases relate to overtime pay. As other jurisdictions have determined, to prove a claim under the FLSA for recovery of minimum wages, a plaintiff must establish (1) employment by defendant during the relevant time; (2) qualification as a covered employee under the FLSA statute, by virtue of being employed in an enterprise engaged in commerce or in the production of goods for commerce; and (3) defendant's failure to pay minimum wage. *See, e.g.*, *Quinonez v. Reliable Auto Glass, LLC*, No. CV-12-080452-PHX-GMS, 2012 WL 2848426, at *2 (D. Ariz. July 11, 2012) (citation omitted); *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007) (listing three similar elements, and including an additional one applicable only to class action plaintiffs). Because the MWHL is the "state statutory equivalent of the FLSA," the elements to prove a cause of action under MWHL statute are identical. *McFeely v. Jackson Street Entm't, LLC,* 47 F. Supp. 3d 260, 267 n.6 (D. Md. 2014).

Defendants primarily contest Jahn's ability to prove the first element, asserting that Jahn was not "employed by" any of the named Defendants in this case during the time in which he was unpaid. ECF 54 at 2 (claiming that Jahn was an "independent contractor for Tiffin Athletic

5

Mats, Inc." until May, 2017, and then for "Tiffin Holdings, Inc."); ECF 56 at 2. Defendants' actions, including their current insistence that Jahn worked, during the unpaid period, only for Tiffin Holdings, Inc., and worked otherwise for a third corporate entity not named as a Defendant, "Tiffin Athletic Mats, Inc.," clearly illustrate an attempt to use their distinct corporate entities to evade wage liability. *See id.*

Under governing law and based on the factual record before this Court, Tiffin Athletic Mats, Inc., Tiffin Holdings, Inc., and Tiffin Athletic Mats, LLC would constitute a "single enterprise" for purposes of liability. *See Roman v. Guapos III, Inc.,* 970 F.Supp.2d 407, 414 (D. Md. 2013). Separate corporate entities form a "single enterprise" if they conduct: "(1) related activities, (2) performed under unified operations or common control, and (3) for a common business purpose." *Brock v. Hamad,* 867 F.2d 804, 806 (4th Cir. 1989); *see also* 29 U.S.C. § 203(r)(1). In light of "Congress's intent to provide a remedy to employees for their employers' wage and hour violations," courts interpret the term "employer" in the FLSA "broadly." *Pearson v. Prof'l 50 States Prot., LLC,* Civil No. RDB-09-3232, 2010 WL 4225533, at *3 (D. Md. Oct. 26, 2010).

Here, the evidence demonstrates that all of the Tiffin Companies were engaged in the same business, were managed by Stringer and the Tiffins, and interchangeably transferred employees and assets without observing standard corporate formalities. *See, e.g.,* ECF 50-2 at 177:3-22 (Daniel Tiffin testimony that Tiffin Holdings, Inc. used the equipment and personnel of "Tiffin Athletic Mats, Inc." to manufacture mats, but then paid rent directly to Daniel Tiffin); ECF 50-3 at 70:8-22 (Stringer testimony that "Tiffin Athletic Mats sales include Tiffin Holdings sales," and that Stringer does the accounting for both businesses in-house). Because the record demonstrates that the companies operated as a single enterprise, Defendants' (factually

unsupported) assertion that Jahn's contract transferred to Tiffin Holdings Inc. during his term of work does not affect the liability of Tiffin Athletic Mats, LLC for his wages.

Jahn has also adduced evidence that the individual Defendants are liable as Jahn's employers. An "employer" under the FLSA includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). An individual can constitute an "employer" covered by the FLSA if the "economic realities of the individual's relationship with the putative employee" demonstrate that the individual is a covered "employer." *Iraheta v. Lam Yuen, LLC*, No. DKC-12-1426, 2012 WL 5995689, at *3 (D. Md. Nov. 20, 2012); *see also Newell v. Runnels*, 407 Md. 578, 649-52 (2009) (applying the same test to MWHL claims). To make this determination, courts look to a number of factors, including whether the individual "(1) has the authority to hire and fire employees; (2) supervises and controls work schedules or employment conditions; (3) determines the rate and method of payment; and (4) maintains employment records." *Iraheta*, 2012 WL 5995689 at *3; *see also Newell*, 407 Md. at 651-52. No one factor in this analysis is dispositive. *Iraheta*, 2012 WL 5995689 at *3.

The evidentiary record here establishes those actions by each of the individual Defendants in this case. *See, e.g.*, ECF 50-1, ¶16 ("Tiffin Holdings, Inc. and Tiffin Athletic Mats, LLC are owned and operated by a married couple, Daniel Tiffin and Linda Tiffin. Both do the hiring and exercise the power to direct employees in the performance of their job."); ECF 50-3 at 35:2-10 (Stringer testimony that Daniel Tiffin hired Jahn "on payroll as a Tiffin employee"); ECF 54-2 at 28:3-8 (Stringer testimony that he signed Jahn's paychecks); *id.* at 69:12-14 (Stringer testimony that he owns Tiffin Athletic Mats); ECF 50-4 (Defendant Linda Tiffin's Answer filed in prior wage litigation, involving a different employee, in which Linda Tiffin

7

admits that she had signatory authority on bank accounts and signed pay checks for employees of Tiffin Mats[3]); ECF 50-1, ¶ 18 ("Daniel Tiffin, Linda Tiffin, and Gerald Stringer would regularly have meetings about the business and its operations."); *id.* ¶ 20 ("If I had difficulties with getting paid, I would usually ask Linda Tiffin, and she would be able to secure me any pay."); *id.* ¶ 12 ("After I repeatedly demanded to get paid, Daniel Tiffin attempted to convince me to work on a strict commission basis."); *id.* ¶ 17 ("Gerald Stringer possessed managerial authority at Tiffin Holdings, Inc. and Tiffin Athletic Mats, LLC.").

Defendants' unsubstantiated assertion that Tiffin Holdings, Inc. is somehow outside of their control is illogical, because they adduce no evidence to suggest how Jahn's contract could have been summarily transferred to that entity, at Jahn's request, if it operated under separate management. Indeed, Defendants offer no evidence whatsoever to support their conclusory assertions that Jahn never worked for any individual Defendant in any capacity. The record therefore suffices to establish liability as "employers" for each of the individual and corporate defendants.

Looking at the second element for recovery under the FLSA, Jahn was employed in an enterprise engaged in commerce, in light of his work selling, by telephone, goods made with interstate products to customers out-of-state. *See* ECF 50-1, ¶¶ 8-9; *see also* ECF 50-2 at 98:20-22 ("There's nothing made in Maryland that we use to make mats, if that answers your question.").

---

[3] In his filing, Stringer contends that Linda's assertions in the prior litigation are irrelevant in this case, because the corporate entities have changed. ECF 54 at 4. If anything, his contention reinforces the notion that Defendants are playing a corporate "shell game" to evade wage liability. In any event, at this stage, Linda's statements appear to be admissible statements by a party opponent at trial, as probative of the fact that she determined the method and rate of Jahn's payment. *See* Fed. R. Civ. P. 56(c)(2).

The third and final element is the defendant's failure to pay at least a minimum wage for hours worked. Stringer conceded at his deposition that Defendants were four weeks behind on Plaintiff's payroll, ECF 50-3 at 149:3-21, and admitted in his filing that "Plaintiff did not receive payments during the last 3 1/2 weeks he was contracted to Tiffin Holdings, Inc.," ECF 54 at 1.

Stringer attached two exhibits to his filing in an attempt to establish that Tiffin Holdings, Inc. is owed a balance for overpayment of wages to Jahn. *See, e.g.*, ECF 54-1 (document entitled Sales Compensation/Kyle Jahn); ECF 54-2 (spreadsheet). Neither document suffices to create a genuine issue of material fact as to Defendants' liability. The first document, which Singer suggests is a "contract," carries significant authenticity concerns, as it is not signed by either Jahn or a representative of Defendants. ECF 54-1. Assuming that Stringer could, at trial, produce sufficient evidence to make the question of authenticity one for the jury, *see* Fed. R. Evid. 901(a), the "contract" does not vitiate the undisputed fact that Defendants did not pay Jahn at least minimum wage for his final three and a half weeks of work, *see* ECF 54 at 1.

The second document, a spreadsheet, appears to be a slightly but materially altered version of a document Defendants produced in discovery, which was used in a deposition. *Compare* ECF 54-2 *with* ECF 57-3. Specifically, Stringer's proffered version of the spreadsheet fails to include some data rows included in the version produced at his deposition, and Stringer's proffered version also includes rows with data differing from the version produced at his deposition. Ultimately, because the version Stringer now relies upon in support of his defense was never produced in discovery, ECF 57 at 4-5, it cannot be considered admissible evidence at the summary judgment stage, *see* Fed. R. Civ. P. 26(a)(1)(ii) (imposing a duty upon litigants to produce all documents that may be used to support a party's defense); *id.* R. 37(c)(1) ("If a party

9

fails to provide information . . . as required by Rule 26(a) . . ., the party is not allowed to use that information" to support a later motion, such as one for summary judgment).

In sum, Defendants have produced no affidavits, declarations, or evidence, in a form admissible at trial, sufficient to create a genuine issue of material fact as to their liability on Jahn's FLSA and MWHL minimum wage claims. Accordingly, with all three elements for liability met on both claims, summary judgment in Jahn's favor is appropriate. .

> B. **Plaintiff is entitled only to the amount of unpaid minimum wages owed, plus liquidated damages, but there is insufficient evidence to justify an attorneys' fees award on the current record.**

"An employer who violates the terms of the FLSA 'shall be liable to the employee or employees affected, in the amount of unpaid minimum wages, of their unpaid overtime compensation, as the case may be, and an additional equal amount as liquidated damages.'" *Williams v. Md. Office Relocators,* 485 F. Supp. 2d 616, 620 (D. Md. 2007) (quoting 29 U.S.C. § 216(b)). Although liquidated damages can be reduced or eliminated if an employer demonstrates a good faith attempt to comply with the FLSA, the employer's burden "is a difficult one to meet . . . and '[d]ouble damages are the norm, single damages the exception.'" *Rogers v. Sav. First Mortg., LLC*, 362 F. Supp. 2d 624, 638 (D. Md. 2005) (alterations in original) (quoting *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)). Defendants offer no admissible evidence of good faith here.

Jahn incorporates alternative monetary requests for relief in his Motion. First, Jahn suggests that the appropriate calculation of his wages would be to multiply his biweekly flat rate of "around $2,440.00" times the four weeks at issue, for a total of $4,880.00, which should then be doubled to account for liquidated damages. *See, e.g.*, ECF 50-5 (Proposed Order). Alternatively, Jahn suggests that Defendants' liability for "at least the minimum wage" be

imposed, which would involve payment of the then-applicable minimum wage of $9.25 per hour, times the 130 hours of work during his last four weeks of employment. ECF 50-1, ¶ 24. That total of $1,202.50 would then be doubled.

The evidence before this Court suggests a question regarding whether Jahn was entitled to payment of exactly $2,440 per biweekly pay period. Jahn's own affidavit merely describes his pay as "around $2,440.00." ECF 50-1, ¶ 7. Neither party has provided bank statements or paystubs to corroborate a regular biweekly pay amount. Thus, on the record before the Court, the undisputed evidence establishes liability only for the failure to pay minimum wage for Jahn's time worked. To address that shortcoming, this Court will order that Defendants shall pay Plaintiff all unpaid minimum wage payments in the amount of $1,202.50, as well as a sum of liquidated damages in an equal amount, for a sum total of $2,405.00.[4] In addition, this Court will consider an award of reasonable attorneys' fees and costs to Jahn, but will defer consideration of such an award until after trial on Count III of the Amended Complaint.

## IV. CONCLUSION

For the reasons set forth above, Jahn's Motion for Summary Judgment, ECF 50, will be GRANTED. The relief requested in Jahn's proposed Order, ECF 50-5, will be granted, except the amount awarded will be adjusted to reflect applicable minimum wage for the hours worked, doubled for liquidated damages. Jahn will be required to file a separate motion to permit this Court to assess an appropriate award of reasonable attorneys' fees and costs after the conclusion of trial on Count III of the Amended Complaint. An implementing Order follows.

---

[4] Although Jahn's declaration makes reference to the possible availability of treble damages, ECF 50-1, ¶ 24, his motion only requests summary judgment on the issue of liquidated damages, ECF 50 at 10-11, and his proposed order is drafted consistent with the more limited request, ECF 50-5.

Dated: March 18, 2020                                             /s/
                                                        Stephanie A. Gallagher
                                                        United States District Judge