IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **KYLE JAHN,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Case No.: SAG-18-1782 |
| | * | |
| **TIFFIN HOLDINGS, INC.,** *et al.*, | * | |
| | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

Plaintiff Kyle Jahn ("Plaintiff") has filed a "Motion for Attorneys' Fees and Costs (And Request to Maintain Supplemental Jurisdiction to Issue Fees/Costs Related to Collection)." ECF 71. Defendants Daniel and Linda Tiffin ("the Tiffins") filed an opposition, ECF 72, and Plaintiff replied, ECF 73. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Plaintiff's Motion will be granted in part and denied in part.

**I.   BACKGROUND**

Plaintiff brought this action against the Tiffins, Gerald Stringer ("Stringer"), Tiffin Holdings, Inc., and Tiffin Athletic Mats, LLC (collectively, "Defendants"). Plaintiff's Amended Complaint contains three Counts, alleging violations, respectively, of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-19 (2018), the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab & Empl., § 3-401 to -431 (West 2019) and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code. Ann., Lab. & Empl., § 3-501 to -509. ECF 23, ¶¶ 90-96 (Amended Complaint). As to his FLSA and MWHL claims, Counts I and II, Plaintiff sought an award of, at least, the minimum wage for his final four weeks of work for the

Defendants, as well as an award of liquidated damages in an equal sum. *Id.* ¶¶ 90-91. As to Count III, the MWPCL claim, Plaintiff sought to recover the full wages owed to him for his last four weeks of work, $4,880, plus treble damages. *Id.* ¶¶ 92-96.

On March 18, 2020, this Court issued a Memorandum Opinion and Order granting Plaintiff's Motion for Summary Judgment as to Counts I and II, and awarded Plaintiff a total of $2,405.00 in damages ($1,202.50 in minimum wages, and an equal sum in liquidated damages). ECF 62, 63. Plaintiff was only entitled to minimum wages, this Court found, because there was insufficient evidence to substantiate his claim of $2,440 in biweekly pay. ECF 62 at 10-11. The Tiffins moved to set aside this ruling, ECF 66, but this Court denied that motion, ECF 67. Not long thereafter, Plaintiff moved to dismiss Count III of the Amended Complaint, and asked the Court to enter a final judgment. ECF 68. After allowing time for Defendants to oppose, ECF 69, and receiving no opposition, this Court granted Plaintiff's motion, ECF 70. The instant fee petition followed.

## II.   LEGAL STANDARDS

To calculate an appropriate award of attorneys' fees, the Court must first determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008). A trial court may exercise its discretion in determining the lodestar amount because it possesses "superior understanding of the litigation," and the matter is "essentially" factual. *Thompson v. HUD*, No. MJG–95–309, 2002 WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2002) (quoting *Daly v. Hill*, 790 F.2d 1071, 1078-79 (4th Cir. 1986)). In exercising that discretion, this Court is "bound" to apply the twelve factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), and initially adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th

Cir. 1978). *McAfee v. Boczar*, 738 F.3d 81, 88 & n.5 (4th Cir. 2013); *see also Thompson*, 2002 WL 31777631, at *6 (footnotes omitted). Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Thompson*, 2002 WL 31777631, at *6 n.19 (citing *Johnson*, 488 F.2d at 717-19). Once the lodestar amount has been determined, the Court "must 'subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" *McAfee*, 738 F.3d at 88 (quoting *Robinson v. Equifax Info Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009). Finally, the Court must analyze the "degree of success enjoyed by the plaintiff," and determine whether the entire claimed fees amount, or "some percentage" of that amount, is a reasonable award. *Id.* (quoting *Robinson*, 560 F.3d at 244; *see also Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 629 (4th Cir. 1995).

### III.   ANALYSIS

The Tiffins first object to the entry of a fee award at all. ECF 72 at 2. However, federal law requires that Plaintiff be awarded his reasonable attorneys' fees and costs. The FLSA expressly provides that the Court must provide a prevailing party with an award of "reasonable attorney[s'] fees to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (2018). A prevailing party is one who succeeds "on any significant issue in litigation which achieves some of the benefit . . . sought in bringing the suit." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983); *see also, e.g.*, *Andrade v. Aerotek, Inc.*, 852 F. Supp. 2d 637, 640 (2012). Because Plaintiff obtained summary judgment as to liability on Counts I (the FLSA) and II (the MWHL), and received a damages award, plus liquidated damages, he qualifies as a "prevailing

3

party."  The Court therefore proceeds to analyze Plaintiff's requested awards of costs and attorneys' fees, respectively.

    **A.**    **Costs**

District courts are vested with discretion to determine, in FLSA cases, which costs may be awarded.  *Roy v. County of Lexington*, 141 F.3d 533, 549 (4th Cir. 1998).  "Examples of types of costs that have been charged to losing defendants include necessary travel, depositions and transcripts, computer research, postage, court costs, and photocopying."  *Almendarez v. J.T.T. Enters. Corp.*, No. JKS-06-68, 2010 WL 3385362, at *7 (D. Md. Aug. 25, 2010) (citing *Vaughns v. Bd. of Educ. of Prince George's Cty.*, 598 F. Supp. 1262, 1289-90 (D. Md. 1984).  Plaintiff here seeks an award of $3,522.15 in costs, consisting of:  $400.00 in filing fees; $106.40 in postage and delivery fees; $2,583 in deposition-related fees; $100.00 in service of process fees; and $332.75 in printing and copying charges, billed at $0.25 per page.  ECF 71 at 15.  The charges are substantiated in the legal bills and represent reasonable expenses under the circumstances of this case.

    **B.**    **Attorneys' Fees**

Next, Plaintiff seeks a total of $55,658.00 in attorneys' fees, comprised of a total of 220.1 hours worked on this case by four attorneys:  Mr. Howard Hoffman (46.5 hours); Mr. Jordan Liew (147 hours); Mr. Gregory Herbers (18.4 hours); and Mr. Scott Kraff (8.2 hours). ECF 71 at 10-14, 22.  In accordance with the framework reiterated in *McAfee*, the Court turns first to determining the lodestar amount through an application of the twelve *Johnson* factors.

    **1.**    **Initial Lodestar Determination**

The Court begins with an assessment of the time and labor expended, which is informed by two additional *Johnson* factors:  the novelty and difficulty of the questions presented; and the

skill required to properly perform the legal service. *See Thompson*, 2002 WL 31777631, at *6-7 (considering these three factors together). The initial burden lies with Plaintiff to demonstrate that the hours requested are, in fact, recoverable. *See, e.g.*, *Fair Hous. Council of Greater Wash. v. Landow*, 999 F.2d 92, 97-98 (4th Cir. 1993). "The court must . . . delete duplicative or unrelated hours, and the number of hours must be reasonable and represent the product of billing judgment." *Chapman v. Ourisman Chevrolet Co.*, No. AW-08-2545, 2011 WL 2651867, at *15 (D. Md. July 1, 2011) (quoting *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994)). For many years, Appendix B to this Court's Local Rules has detailed the best practices for attorneys seeking fee awards from the Court. Application of a number of these best practices, and other considerations, results in a number of reductions to the hours Plaintiff's attorneys have billed.

*First*, Guideline 2(d) in Appendix B states that "only one lawyer is to be compensated for client, third party, and intra-office conferences, although if only one lawyer is being compensated the time may be charged at the rate of the more senior lawyer." Relatedly, Guideline 2(b) provides that "[o]nly one lawyer for each separately represented party shall be compensated for attending depositions." The Court's review of Plaintiff's attorneys' billing statements, ECF 71-2, revealed several instances in which Mr. Hoffman and/or his junior associates made duplicative billing entries for attending the depositions of Defendants Linda Tiffin, Daniel Tiffin, and Gerald Stringer, for attending intra-office conferences, and for reviewing communications from Plaintiff and from individual Defendants. Accordingly, the Court has disregarded these duplicative entries, and considered only the billing entry from the most senior attorney (which, in most cases, was Mr. Hoffman). *See Manning v. Mercatanti*, Civ. Nos. ELH-11-2964, ELH-12-00195, 2014 WL 1418322, at *7 (D. Md. Apr. 10, 2014) (applying

Guideline 2(d) and eliminating billing entries in which more than one attorney billed for an intra-office conferences, and allowing the most senior attorney to recover for the time billed).

*Second*, the Court observed a number of entries in which Plaintiff's attorneys billed for clerical tasks, such as filing documents on the Court's electronic case filing ("ECF") system, preparing documents for mailing to the *pro se* defendants, and mailing the documents themselves. Clerical work is not properly billable as legal fees to one's adversary. *See Gates v. Barnhart*, 325 F. Supp. 2d 1342, 1348 (M.D. Fla. 2002) ("Tasks of a clerical nature are not compensable as attorney's fees" (quoting *Mobley v. Apfel*, 104 F. Supp. 2d 1357, 1360 (M.D. Fla. 2000) (denying compensation for mailing a complaint and summons))); *see also Magwood v. Astrue*, 594 F. Supp. 2d 557, 563 (E.D. Pa. 2009) (finding that clerical tasks should be excluded from the total attorney fee); *Chapman v. Astrue*, 2:08CV00040, 2009 WL 3764009, at *1 (W.D. Va. Nov. 9, 2009) (finding that "purely clerical tasks are ordinarily a part of a law office's overhead and should not be compensated for at all"). Accordingly, specific billing entries involving clerical tasks have been stricken. Moreover, in those instances in which a clerical task is subsumed within a larger billing entry (e.g., reviewing and editing a motion, and then filing the motion), the Court has reduced the time billed by 0.1 hours, if just for transmitting the document, or 0.2 hours, if the billed task included both preparing documents for mailing and/or subsequently mailing them.

*Third*, the Court observed several instances in which Plaintiff's attorneys billed for simply reading a Court order. In accordance with Guideline 2(d) above, the Court does not find it necessary for multiple attorneys to bill for reviewing a Court order. Moreover, few of the orders that Plaintiff's attorneys billed for reviewing required enough labor to justify even billing 0.1 hours. For instance, Plaintiff's attorneys billed for reviewing the Order granting Plaintiff's

Motion for Alternative Service, ECF 5, when that Order appears to be the exact form of the Proposed Order Plaintiff submitted, *see* ECF 4-4.  Accordingly, the Court will consider only billing entries for review of the following substantive Orders, from the most senior attorney that billed for the review:  the initial Scheduling Order, ECF 18; the Memorandum Opinion and Order denying Plaintiff's Motion for Default Judgment, ECF 29 and 30; the Order granting Defendant Gerald Stinger's Motion to Vacate Order of Default, ECF 41; the Order denying Plaintiff's Motion for Reconsideration of the same, ECF 43; the Order from this Court requesting clarification regarding Plaintiff's Motion for Summary Judgment, ECF 60; the Memorandum Opinion and Order granting Plaintiff's Motion for Summary Judgment, ECF 62 and 63; the Order denying Defendant's Motion to Set Aside Summary Judgment, ECF 67; and the Memorandum and Order granting Plaintiff's Motion to Withdraw Remaining Count III, ECF 70.

*Fourth*, the number of hours billed for particular projects are, in this Court's view, unreasonable, given the skill necessary for competently completing those projects, and each lawyer's respective skill level.  Beginning with Mr. Liew, he billed 2.4 hours in June, 2019 to prepare a "status report and motion to amend the scheduling order," which Mr. Hoffman spent 0.3 hours reviewing and conferring with Mr. Liew about.  ECF 71-2 at 39-40.  After reviewing the Status Report ultimately filed with the Court, ECF 32, the Court finds that no more than one hour would have been reasonably necessary for an attorney with almost four years of experience, at that time, to draft and review the filing.  Accordingly, Mr. Liew's billing entry will be reduced to 0.7 hours, and Mr. Hoffman will be permitted to bill 0.3 hours for his review of the draft order and conference.  Mr. Liew's total billing entry of 2.5 hours relating to "[r]esearch and drafting memo re salary basis deductions and FLSA retaliation" will also be stricken, because it is not evident to the Court how this research was necessary, or ultimately helpful, to the development

of his client's case. *See* ECF 71-2 at 1. Mr. Liew's billing entry of 1.1 hours for "Training with HBH" on June 22, 2018, will also be eliminated, because it too does not appear tailored to any work performed to further Plaintiff's case. Next, Mr. Herbers billed a total of seven hours for drafting a letter to Defendants regarding their incomplete discovery requests. *Id.* at 24-25. The Court is aware that the *pro se* Defendants who litigated this case hardly, if at all, participated in the discovery process. In that circumstance, a letter to those Defendants protesting the total non-production of documents should not have taken a lawyer with approximately three years of experience, at that time, over eight hours to complete. Nor have Plaintiff's attorneys provided the Court with any evidence to show that the letter was so laborious such that it required seven hours' worth of work. The Court will accordingly reduce the amount billed by fifty percent, and will allow Mr. Herbers to bill 3.5 hours for drafting the letter.

*Fifth*, this Court finds that Plaintiff's attorneys are not entitled to recover any portion of the 11.1 hours spent drafting, reviewing, and filing a motion seeking default judgment as to the two corporate defendants, because that motion was ultimately unsuccessful. *See* ECF 29, 30. A plaintiff may be entitled to recover fees incurred during an unsuccessful stage of the litigation, as long as that unsuccessful stage constituted "a necessary step to ultimate victory." *Imgarten v. Bellboy Corp.*, 383 F. Supp. 2d 825, 839 (D. Md. 2005). "In other words, 'plaintiffs are to be compensated for attorney[s'] fees incurred for services that contribute to the ultimate victory in the lawsuit.'" *Id.* (quoting *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1052 (9th Cir. 1991)). Here, the default judgment motion was not a "necessary step to ultimate victory." In her ruling, United States District Judge Ellen L. Hollander discussed how Plaintiff's motion failed to "address the implications of granting a default judgment as to only two of the five defendants," which were first elucidated in a 19th century Supreme Court case, and that those implications

8

required denial of Plaintiff's motion. ECF 29 at 7-9. In other words, while Plaintiff would eventually be able to obtain a default judgment against the corporate Defendants, binding Supreme Court precedent mandated that that motion not come until later in the proceedings. Given this, the Court deems it unreasonable to allow billing for any of the costs associated with drafting that motion, since it was not a "necessary step" to Plaintiff's ultimate victory.

*Sixth*, Plaintiff seeks to recover the $1,000 he paid to a previous law firm pursuant to a retainer agreement to prosecute these very same claims. According to Mr. Hoffman, the previous law firm "only sen[t] a demand letter on Plaintiff's behalf, accompanied by a poorly drafted lawsuit." ECF 71-1, ¶ 29. The draft complaint "appeared to parallel a prior lawsuit and sought unpaid overtime, which is not at issue in this case." *Id.* Whatever the quality of the pervious firm's work may have been, Plaintiff's retainer agreement with that firm makes clear that the firm was hired "solely in relation to attempting to negotiate a settlement with [Plaintiff's former employer, Tiffin Holdings, Inc. []] and specifically not for the purpose of filing a lawsuit in any court." ECF 71-3 at 1 (Retainer Agreement § I.A) (emphasis in original). Given the limited scope of Plaintiff's retainer agreement, the Court does not believe that the monies expended in furtherance of that relationship are sufficiently related with, or a "necessary step" in, his instant affirmative FLSA action here. *See Rum Creek*, 31 F.3d at 175 (calling for the elimination of "unrelated hours" from the lodestar amount); *Imgarten*, 383 F. Supp. 2d at 839-40.

Having conducted its initial review of Plaintiff's billing statements, the Court next turns to any objections proffered by the Tiffins. The Tiffins first object to including in the lodestar amount the fees Plaintiff incurred in effecting service. ECF 72 at 1. They point to a letter they filed on July 21, 3018 (prior to ever being served), in which they objected to Plaintiff's Motion for Alternative Service on the basis that the process server did not take reasonably diligent

efforts to properly serve them.  *Id.*; *see* ECF 7.  Judge Hollander construed this letter as a motion for reconsideration of her order allowing for alternative service, and denied the request, finding that the Motion for Alternative Service demonstrated ample grounds for the relief sought.  ECF 11.  Indeed, as Judge Hollander noted, Plaintiff's process server attempted to serve the Tiffins six times, without success.  *Id.* at 1.  Whether or not the Tiffins intended to evade service, this Court is not persuaded by the Tiffins' instant filing that the process server's, or Plaintiff's counsel's, efforts to serve the Tiffins were unreasonable.

The Tiffins also appear to argue that Plaintiff's claimed fees are unreasonable because his attorneys "would have better served their client by accepting the offer of settlement given to them by Gerry Stringer and Tiffin Holdings in October of 2018."  ECF 72 at 2.  In making its lodestar determination, this Court "has discretion to consider settlement negotiations in determining the reasonableness of fees but it is not required to do so."  *McAfee*, 738 F.3d at 90-91 (quoting *Thomas v. Nat'l Football League Players Ass'n*, 273 F.3d 1124, 1130 n.9 (D.C. Cir. 2001)).  In *Clark v. Sims*, the Fourth Circuit held that a trial court abused its discretion in reducing an attorneys' fees award based on the prevailing party's rejection of a prior settlement offer, because that settlement offer did not constitute an "offer of judgment" under Rule 68.  28 F.3d 420, 423-24 (4th Cir. 1994).  The court positively cited to *Ortiz v. Regan*, 980 F.2d 138, 141 (2d Cir. 1992), for the notion that a court's attorneys' fees analysis "must be guided by the principle that mere settlement negotiations may not be given the effect of a formal offer of judgment."  *Clark*, 28 F.3d at 424.  In *Ortiz*, the Second Circuit observed that, generally, a failure to settle a case should not lead a court to reduce an attorneys' fees award, absent bad faith on the prevailing party's behalf.  980 F.2d at 141 (citation omitted).  Here, there is no evidence that the Tiffins, or any Defendant, made a formal offer of judgment.  Moreover, there is no evidence in

the record to suggest that Plaintiff's rejection of the alleged settlement offer (the terms of which are unknown to this Court) constituted bad faith. The Court therefore will not adjust the lodestar amount on this ground.

Having considered the billing hours deductions above, the following represents the total number of allowable hours worked for each attorney:

| Attorney | Requested Hours | Recoverable Hours |
|---|---|---|
| Scott Kraff | 8.2 | 6.0 |
| Gregory Herbers | 18.4 | 9.9 |
| Jordan Liew | 147.0 | 116.7 |
| Howard Hoffman | 46.5 | 42.5 |
| **Total** | **220.1** | **175.1** |

Considering the complexity of the issues presented in this case, this Court finds that each attorney's billed hours are reasonable. The litigation began with difficulties in serving the individual Defendants, and the two corporate Defendants defaulted. Even after effecting proper service, Plaintiff's counsel needed to continue to work with the *pro se* Defendants to ensure that they were apprised of scheduling deadlines, and to make discovery materials accessible to them. Even after undertaking this effort, counsel needed to expend additional time, because the individual Defendants largely failed to participate in the discovery process, outside of sitting for their depositions. Because of the legal issue that was central to Plaintiff's claim – whether the individual Defendants could be held liable as "employers" under the FLSA and MWHL – Plaintiff's counsels' task became more difficult in the absence of traditional discovery. The "employer" analysis under the FLSA and MWHL is a fact intensive one. Thus, to satisfy their client's burden at the summary judgment stage, Plaintiff's counsel had to spend additional time researching the structure of the (strategically defaulted) corporate entities, through whatever public records they could find, as well as additional time arduously combing through deposition transcripts for information that may benefit their client. Combining all of this with the time

reasonably spent briefing the summary judgment motions, the instant motion, as well as other issues arising during this litigation and reflected in the billing records, this Court is satisfied that the hours that Plaintiff's counsel spent working on this case are reasonable.

The Court must next ascertain the reasonable hourly rate in this case, which looks to the "prevailing market rates in the relevant community for the type of work for which [the party] seeks an award." *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987). Necessarily, then, this analysis encompasses *Johnson* factors 3 (the attorneys' skill and experience) and 5 (the customary rate). Included in Appendix B to this Court's Local Rules are ranges of presumptively reasonable hourly rates charged by attorneys practicing in this Court. *See* Loc. R. App. Guideline B(3). While "the Guidelines are not binding, generally this Court presumes that a rate is reasonable if it falls within these ranges." *Gonzales v. Caron,* Civ. No. CBD–10–2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011). Here, each of the four attorneys billing in this matter seek compensation pursuant to an hourly rate within the applicable Guideline range:

| Attorney | Experience | Applicable Guideline Range | Requested Hourly Rate |
|---|---|---|---|
| Scott Kraff | Approx. 4 years | $150-$225 | $205 |
| Gregory Herbers | Approx. 4 years[1] | $150-$225 | $205 |
| Jordan Liew | Approx. 4 years | $150-$225 | $215 |
| Howard Hoffman | Over 20 years | $300-$475 | $400 |

Having reviewed each attorney's qualifications and experience, attested to in the affidavits submitted by Mr. Hoffman and Mr. Liew, the Court is satisfied that the hourly rate at which they seek compensation is reasonable in this legal market. Thus, the total initial lodestar amount in this case is $45,350.00, as evidenced below:

---

[1] Mr. Kraff began practicing law in 2015, but left his employment with Hoffman Law in mid-April, 2019. ECF 71-1, ¶ 28. Accordingly, this Court will consider the reasonableness of the hourly rate he charged, commensurate with his experience level up until the time he left Hoffman Law's employ.

12

| Attorney | Hourly Rate | Recoverable Hours | Initial Lodestar Amount |
|---|---|---|---|
| Scott Kraff | $205 | 6.0 | $1,230.00 |
| Gregory Herbers | $205 | 9.9 | $2,029.50 |
| Jordan Liew | $215 | 116.7 | $25,090.50 |
| Howard Hoffman | $400 | 42.5 | $17,000.00 |
| **Total** |  | **175.1** | **$45,350.00** |

Continuing with the lodestar analysis, the Court considers *Johnson* factors 6, 7, 10, and 11: whether the fee is fixed or contingent; the time limitations that the representation placed on the attorneys; the undesirability of the case; and the nature and length of the professional relationship between the attorney and client. Plaintiff's attorneys undertook representation in this matter on a contingency basis. *See* ECF 71 at 24 ("Undersigned counsel has not received any payment and relies on this Fee Petition as the sole source of compensation."). As one court in this District recently noted, "cases with individual wage and hour claims are generally less desirable to attorneys as the potential recoverable amount is likely much smaller than a class action." *Matias Guerra v. Teixeira*, No. TDC-16-0618, 2019 WL 3927323, at *7 (D. Md. Aug. 20, 2019). Even though the FLSA mandates an award of attorneys' fees, counsel must still front all of the litigation costs, despite the risk that their client may not prevail on the merits. *See id.* Indeed, the law firm that Plaintiff retained in this matter "is a small law firm," employing at most four lawyers during the lifespan of Plaintiff's case.[2] ECF 71 at 23. A firm of this size would therefore incur opportunity costs in litigating a case like this, though Plaintiff's counsel do not seek a commensurate increase in the award. *See id.* Finally, Plaintiff's counsel were involved in the prosecution of the instant claims for the duration of this lawsuit. All of these considerations support the conclusion that the lodestar amount of $45,350.00 is reasonable.

---

[2] Counsel for Plaintiff represent that the firm currently employs two lawyers, ECF 71 at 23, but the Court notes that the firm appears to have previously employed at least two associates, Messrs. Kraff and Herbers.

The final two *Johnson* factors for consideration are factors 8 and 12: the amount involved and the results obtained; and awards in similar cases. Counts I and II of Plaintiff's Amended Complaint sought to recover only the minimum wage owed to Plaintiff for his final four weeks of pay, plus liquidated damages. ECF 23, ¶¶ 90-91. Count III, which was voluntarily dismissed, sought Plaintiff's promised final two weeks of pay of $4,880 (four weeks of work at a flat rate of $2,440 per pay period), plus treble damages. *Id.* ¶¶ 92-96. Thus, as to Counts I and II, Plaintiff recovered the maximum possible award of $2,405.00 ($1,202.50 in minimum wages for four weeks of work, and a liquidated damages award in an equal amount). His claim could have been worth up to $14,640, however, had he pursued Count III and ultimately prevailed at trial. Nonetheless, after considering a number of FLSA verdicts in this District, this Court is satisfied that a lodestar amount of $45,350.00, even in the face of a $2,405.00 verdict, is reasonable. *See, e.g.*, *Almendarez*, 2010 WL 3385362, at *1, *8 (awarding $84,058.00 in attorneys' fees after only three of eight plaintiffs prevailed after a jury trial, with each receiving $3,200.00, $1,200.00, and $2,200.00, respectively, including liquidated damages); *Chapman*, 2011 WL 2651867, at *13, *18 (awarding $37,292.52 in attorneys' fees for two of the twelve plaintiffs who accepted a Rule 68 Offer of Judgment, and recovered $2,500.00 and $600.00, respectively).

    **2.**    **Subtracting Fees Incurred in Pursuit of Unsuccessful Claims**

Next, this Court "must subtract fees for hours spent on unsuccessful claims." *McAfee*, 738 F.3d at 88; *see also Randolph v. PowerComm Constr., Inc.*, 780 F. App'x 16, 22 (4th Cir. 2019). Where an unsuccessful claim is "distinct in all respects from the successful claims," then a Court must eliminate all fees incurred in pursuit of that unsuccessful claim. *Hensley*, 461 U.S. at 440. In many cases, however, a plaintiff's claims may involve "a common core of facts" or be

14

based on "related legal theories." *Randolph*, 780 F. App'x at 16. Such cases make it difficult "to divide the hours expended on a claim-by-claim basis," for "[m]uch of counsel's time will be devoted generally to the litigation as a whole." *Id.* (quoting *Hensley*, 461 U.S. at 435). In these difficult cases, "[w]here hours benefited both successful and unsuccessful claims, the court will grant those hours reasonably expended on the [successful] claim and exclude those that exceed a reasonable expend[iture] on the prevailing claims." *Sakala v. Milunga*, No. PWG-16-0790, 2018 WL 5724010, at *9 (D. Md. Oct. 31, 2018) (internal quotations omitted) (quoting *Andrade*, 852 F. Supp. 2d at 642).

Here, the Court will reduce almost none of Plaintiff's claimed attorneys' fees based on the fact that Plaintiff voluntarily dismissed Count III of his Amended Complaint, under the Maryland Wage Payment and Collection Law ("MWPCL"). While MWPCL claims can materially differ from FLSA and MWHL claims, *see Butler v. DirectSAT USA, LLC*, 800 F. Supp. 2d 662, 669-70 (D. Md. 2011), here, Plaintiff's MWPCL claim was largely duplicative of the FSLA and MWHL claims that Plaintiff successfully obtained summary judgment on. The facts necessary to establish Defendants' status as Plaintiff's "employer" under the FLSA and MWHL would have been germane to the same analysis under the MWPCL. *See* Md. Code Ann., Lab. & Empl. §§ 3-101(c)(2), 3-501(b) (West 2019) (defining an "employer" as "any person who employs an individual in the State," and "employ" as "allowing an individual to work" and "instructing an individual to be present at a work site"). The wages that Plaintiff was not paid also formed the basis of all three claims. *See generally* ECF 23 (Amended Complaint). Thus, the efforts to serve Defendants, the information that Plaintiff sought to obtain in discovery, and all other efforts expended up until the summary judgment stage, supported equally each of the three claims for relief. Accordingly, the lodestar amount will not be adjusted downward in this

15

regard. The only fees that will be eliminated are the ones that Plaintiff's counsel seek to recover for drafting and reviewing the motion submitted to voluntarily dismiss the MWPCL claim, as those are attributable solely to the unsuccessful claim. *See* ECF 71-2 at 47-48; *see also Jackson v. Estelle's Place, LLC*, 391 F. App'x 239, 241, 243 (4th Cir. 2010) (characterizing as "unsuccessful" nine claims that the plaintiffs included in their complaint, but "abandoned" as the result of a settlement). This results in a reduction of an additional 0.1 hours from Mr. Liew's billed time, and 2.0 hours from Mr. Hoffman. The amended lodestar amount is therefore $44,528.50, as demonstrated below:

| Attorney | Hourly Rate | Recoverable Hours | Amended Lodestar Amount |
|---|---|---|---|
| Scott Kraff | $205 | 6.0 | $1,230.00 |
| Gregory Herbers | $205 | 9.9 | $2,029.50 |
| Jordan Liew | $215 | 116.6 | $25,069.00 |
| Howard Hoffman | $400 | 40.5 | $16,200.00 |
| **Total** | | **173.0** | **$44,528.50** |

### 3. Reduction Based Upon the Plaintiff's Degree of Success

The last part of the three-part *McAfee* framework requires the Court to "award 'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" *McAfee*, 738 F.3d at 88 (quoting *Robinson*, 560 F.3d at 255). Plaintiff argues that he received a judgment "resulting in no less than full compensatory damages," meaning that there should be no reduction in this regard. The Tiffins argue, however, that Plaintiff's original claim was for $14,460, but Plaintiff only recovered 18% of that ($2,440), resulting in a low level of success. ECF 72 at 2.

"[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). While quantifying success is "challenging," courts nonetheless "*must* compare the amount of damages sought to the amount awarded." *Randolph*, 780 F. App'x at 23

(quoting *Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005) (emphasis supplied by *Randolph*)).

In civil rights cases like this, though, the Supreme Court has "reject[ed] the proposition that fee awards . . . should necessarily be proportionate to the amounts of damages" actually recovered. *Matias Guerra*, 2019 WL 3927323, at *9 (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986)); *see also, e.g.*, *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 454 (2008) (referring to, *inter alia*, the FLSA for the proposition that several "civil rights statutes" contain antiretaliation language). Like other civil rights actions, FLSA actions often involve "vulnerable plaintiffs" who "may be vindicating important rights that entitle them to relatively modest compensation," *Reyes v. Clime*, No. PWG-14-1908, 2015 WL 3644639, at *4 (D. Md. June 8, 2015), and a rule requiring proportionality "would 'seriously undermine Congress' purpose' and prevents victims who frequently cannot pay counsel at market rates from effective access to the justice system." *Salinas v. Comm. Interiors, Inc.*, No. 8:12-cv-1973-PWG, 2018 WL 2752553, at *3 (D. Md. June 8, 2018) (quoting *Rivera*, 477 U.S. at 576). Indeed, the Fourth Circuit has recognized that "[a]wards of attorney[s'] fees substantially exceeding damages are not unusual in civil rights litigation." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 328 n.20 (4th Cir. 2006). However, this Court must also ensure that a fee award does not "produce a windfall to attorneys." *Butler v. DirectSAT USA, LLC*, No. CV DKC-10-2747, 2016 WL 1077158, at *6 (D. Md. Mar. 18, 2016).

In FLSA cases, the Fourth Circuit has upheld reductions to, or has itself reduced, lodestar amounts because of the disparity between the damages sought in the plaintiff's complaint, and the success that the plaintiff actually realized. For instance, in *Jackson*, the Fourth Circuit found that the trial court acted "plainly" acted within its discretion in reducing, by 25%, the lodestar

17

amount in an FLSA case that settled in the early stages of litigation. 391 F. App'x at 240-41, 243-44. Each of the six plaintiffs received a "modest" amount ranging from $430 to $12,471.34, and as a result of the settlement, the plaintiffs "abandoned" nine of the original thirteen claims asserted in their complaint, constituting a low level of success that justified a reduction in the lodestar amount. *Id.* In *Randolph*, the Fourth Circuit found that a trial court abused its discretion by *failing* to reduce the lodestar amount. Sixty-five plaintiffs originally sought over $1.7 million in unpaid overtime wages and liquidated damages, as well as a declaratory judgment, but ten plaintiffs were dismissed, and the remaining fifty-five ultimately settled for $100,000.00 in damages. 780 F. App'x at 18-19, 22-25. Regarding the success of the fifty-five plaintiffs who settled, the court noted that those plaintiffs "received only 38% of their claimed unpaid overtime wages," or "only 6% of the damages sought at the outset of litigation." *Id.* at 24. Moreover, the court pointed out that the settling plaintiffs appeared to have "weak claims" on the merits. *Id.* at 24-25. Accordingly, the Fourth Circuit remanded with instructions that the trial court reduce the $177,756.50 fee award by 25%. *Id.* at 25.

Courts in this District have also reduced lodestar amounts in FLSA cases for similar reasons. *See, e.g.*, *Matias Guerra*, 2019 WL 3927323, at *10 (reducing the lodestar by only 5% because the plaintiff, despite a "staunch opposition," prevailed on all of his wage and hour claims except one, but failed to demonstrate an entitlement to treble damages); *Sakala*, 2018 WL 5724010, at *11-12 (reducing the $91,804.17 lodestar amount by 20%, because the amount that the plaintiff recovered was "less than half" of what she originally sought in her wage and hour claims, and a "small fraction" of what she sought for an unrelated claim that she withdrew two weeks prior to trial); *Chapman*, 2011 WL 2651867, at *17-18 (reducing the lodestar by 25% because the two settling plaintiffs each sought $5,291.91 in damages under the FLSA, but

recovered "less than fifty percent and fifteen percent, respectively," resulting in a fee award of $37,292.52); *Almendarez*, 2010 WL 3385362, at *7 (reducing the $84,058.00 lodestar amount by 25% because the jury found that four plaintiffs were properly compensated for overtime pay, and that of the three who were not, they were each entitled to only $1,600, $600, and $1,100, rendering their victory "close to technical").

Considering these decisions in light of the facts presented here, this Court believes that some further reduction of the lodestar amount is warranted. Plaintiff is correct that the Defendants did not make litigating this case easy, given the multiple efforts needed to effectuate services, and the overwhelming lack of participation in written discovery. Plaintiff is also correct in that he was largely successful on Counts I and II. However, it is evident, as the Tiffins point out, that Plaintiff did not see quite the level of success originally forecasted in the Complaint. Plaintiff originally sought an award of his actual wages for his two unpaid paychecks, $4,880, or minimum wages, in Counts I and II, and award of his actual wages in Count III. Had he provided evidence to substantiate these wages in his Motion for Partial Summary Judgment, Plaintiff may have recovered $9,760. Plaintiff failed to do so, however, leaving him with only a fraction of that sum ($2,405) in minimum wages and liquidated damages. And, had Count III proceeded to trial, he potentially could have realized treble damages on his claimed wages, for a total of $14,640. Instead, he chose to forego that trial (presumably because a jury trial in this matter would not feasibly occur until well into 2021, due to the COVID-19 global pandemic), and to accept the $2,405 award. Thus, the disparity between Plaintiff's originally requested damages award ($14,640) and his realized award ($2,405) is significant. Yet given Plaintiff's counsels' overall reasonable efforts in litigating this case in light of difficult *pro se* litigants, and their decision to end this litigation in favor of a final

resolution, rather than to permit further accumulation of attorneys' fees, a more modest reduction in the lodestar amount is warranted. The Court will accordingly reduce the amended lodestar amount of $44,528.50 by 15%, resulting in a final attorneys' fees award of $37,849.23. Combined with the $3,522.15 costs award, Plaintiff's total fee and costs recovery is $41,371.38.

Finally, Plaintiff asks this Court to retain jurisdiction to issue a supplemental fee award, because "it is anticipated that Defendants will make collection of the Judgment difficult in this case." ECF 71 at 26. This Court agrees that it has the authority to retain jurisdiction for this very limited purpose, and will do so. *See Jackson v. Egira, LLC*, No. RDB-14-3114, 2016 WL 5815850, at *4 n.5 (D. Md. Oct. 5, 2016); *Durham v. Jones*, No. WMN-10-cv-2534, 2012 WL 3985224, at *10 (D. Md. Sept. 10, 2012).

## IV.   CONCLUSION

For the reasons stated above, Plaintiff's Motion for Attorneys' Fees and Costs, ECF 71, is GRANTED IN PART and DENIED IN PART, without prejudice to Plaintiff seeking a supplemental award, as may be appropriate under the circumstances. Plaintiff will be awarded $41,371.38 in attorneys' fees and costs. A separate order follows.

Dated:  August 3, 2020                                          /s/
                                                       Stephanie A. Gallagher
                                                       United States District Judge